<div style="writing-mode: vertical">United States District Court<br>Northern District of California</div>

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| TEVRA BRANDS, LLC, | Case No.  24-cv-04683-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFEDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| ELANCO ANIMAL HEALTH INCORPORATED, et al., | [Re:  ECF No. 23] |
| Defendants. | |

Plaintiff Tevra Brands, LLC ("Tevra") brings this antitrust lawsuit against Defendants Elanco Animal Health Incorporated ("Elanco Animal Health") and Elanco US, Inc. ("Elanco US") (collectively "Elanco" or "Defendants") alleging Elanco engaged in exclusionary practices that substantially foreclosed generic competitors from entering the market for "squeeze-on" Imidacloprid Topicals flea and tick treatments for dogs and cats. *See* ECF 1 ("Compl."). In the Complaint, Tevra asserts the following antitrust violations against Elanco: 1) Section 2 of the Sherman Act, 15 U.S.C. § 2, for unlawful maintenance of a monopoly, Compl. ¶¶ 105-10, 2) Section 1 of the Sherman Act, 15 U.S.C. § 1, for executive dealing, Compl. ¶¶ 111-15, 3) Section 3 of the Clayton Act, 15 U.S.C. § 14, for exclusive dealing, Compl. ¶¶ 116-21; and 4) Section 1 of the Sherman Act, 15 U.S.C. § 1, for leveraging to maintain a monopoly, Compl. at 34.

Before the Court is Elanco's motion to dismiss Tevra's complaint. ECF 23 ("Mot."). Tevra filed an opposition. ECF 27 ("Opp.[1]"). Elanco filed a reply. ECF 34 ("Reply"). On February 20, 2025, the Court heard oral argument on the motion. ECF 37. For the reasons below, the Court GRANTS Elanco's motion to dismiss Tevra's complaint WITH LEAVE TO AMEND.

---

[1] In this Order, citation to Tevra's opposition is based on the ECF stamp at the top of each page.

## I.   BACKGROUND

### A.  The Bayer Action

On July 26, 2019, Tevra filed an antitrust action against Bayer HealthCare LLC ("Bayer"), alleging that Bayer's sale of name brand Advantage and Advantix topical flea and tick treatments for cats and dogs with the active ingredient Imidacloprid violated antitrust laws. *See Tevra Brands, LLC v. Bayer HealthCare LLC et al.*, No. 5:19-cv-04312-BLF (N.D. Cal., filed on July 26, 2019) ("Bayer Action"), ECF 1, ¶¶ 1–2, 7. In the Bayer Action, Tevra asserted three claims: (1) violation of Section 1 of the Sherman Act (exclusive dealing), (2) violation of Section 2 of the Sherman Act (maintenance of a monopoly), and (2) violation Section 3 of the Clayton Act (exclusive dealing). *Id.*, ¶¶ 146-65. All three claims were tried to a jury. *See* Bayer Action, ECF 472, Trial Tr. at 168:11-18.

On July 19, 2024, trial began; it lasted for nine days. *See* Bayer Action, ECF 452, 457, 461, 462, 464, 478, 479, 481, 484. On July 30, 2024, Tevra withdrew and moved to dismiss its claim (1) for violation of Section 1 of the Sherman Act (exclusive dealing), and the Court dismissed that claim. *See* Bayer Action, ECF 477, Trial Tr. at 1262:21-1263:4. On August 1, 2024, the jury returned a verdict as to Tevra's Claims 2 and 3. *See* Bayer Action, ECF 485 (Jury Verdict). The jury found for Bayer on both claims. *See id.* As for the market definition, the jury answered "No" to the following question: "Did Tevra Brands, LLC ("Tevra") prove, by a preponderance of the evidence and in accordance with the instructions given to you, that the relevant antitrust market is topical imidacloprid flea and tick products for dogs and cats in the United States?" *See id.* On the same day, the Court entered Judgment. *See* Bayer Action, ECF 487.

### B.  The Elanco Action

And now, it seems like déjà vu all over again. On August 1, 2024, Tevra has brought a nearly identical action ("Elanco Action") against Elanco which is summarized below. *See* Compl. For purposes of this motion, the Court accepts as true all well-pled facts in Tevra's Complaint. *See id.*

Elanco purchased Bayer's animal health division in August of 2020. Compl. ¶ 7. Since then, Elanco has been selling Bayer's former name brand Advantage and Advantix flea and tick treatments "squeeze-on" (or topical) for cats and dogs with Imidacloprid as an active ingredient. *Id.*

¶¶ 1–2, 7. Tevra competes with Elanco by producing generic Imidacloprid Topicals. *Id.* ¶¶ 1–2. Tevra alleges that its generic Imidacloprid Topicals are less expensive and more effective than Elanco's Advantage and Advantix flea and tick treatments. *Id.* ¶ 3. Despite those facts, Tevra alleges that many pet specialty retailers did not purchase Tevra's generic Imidacloprid Topicals due to Elanco's anticompetitive conduct. *Id.* ¶ 3.

According to Tevra, "Elanco made approximately 85% of all sales in the relevant market during 2020," and "received patent license royalties for up to the remaining 15% from CAP IM Supply, Inc." Compl. ¶ 4. Tevra defines the relevant market as: "topical imidacloprid flea and tick products for dogs and cats in the United States." Compl. ¶ 15.

Tevra alleges that Elanco entered into various anti-competitive strategies to block generic entry and competition to maintain its monopoly in Imidacloprid Topicals. *Id.* ¶ 72. Specifically, Elanco allegedly entered illegal exclusive dealing and leveraging agreements with retailers and distributors and forced them not to carry generic Imidacloprid Topicals. *Id.* ¶ 4. Elanco also allegedly "punish[ed] those who carried generic competitors to Elanco" and "reward[ed] those who did not." *Id.* ¶ 58. Elanco's agreements allegedly include "exclusivity discounts" conditioned on the retailer's refusal to carry generic Imidacloprid Topicals. *Id.* ¶ 74. Elanco's agreements are allegedly "not easily terminable by retailers or distributors" because of 1) Elanco's near 100% market share, 2) retailers' and distributors' fear of losing the anticompetitive discounts on Elanco's products, and 3) the significant barriers to enter the Imidacloprid Topical market. *Id.* ¶¶ 78, 79, 82.

Tevra alleges that it offered retailers generic Imidacloprid Topicals at prices about 50% lower than Elanco's discounted wholesale prices, but that multiple major retailers and distributors have refused to purchase Tevra's Imidacloprid Topicals. *Id.* ¶ 71. Tevra believes that it has been foreclosed by Elanco from between 37% and 51% of all sales of Imidacloprid Topicals in the U.S. *Id.* ¶ 86. Tevra alleges that it "sold almost none of its generic Imidacloprid topical in the pet specialty channel" from 2020 to 2024. *Id.* ¶ 71.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the Foman factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III.    REQUEST FOR JUDICIAL NOTICE

In the Motion, Elanco requests that the Court take judicial notice of the pleadings in the Bayer Action, including the operative complaint and the judgment. *See* Mot. at 10, n. 2. Tevra does not oppose Elanco's request. Opp. at 9. The Court GRANTS Elanco's request for judicial notice. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice

1    of its own records in other cases.").

2    ## IV.  DISCUSSION

3    ### A.  Res Judicata (All Counts)

4        In its motion to dismiss, Elanco argues that Tevra's Complaint should be dismissed because

5    it is barred by res judicata. Mot. at 8; Reply at 2.  Elanco argues that the claims in this action are

6    identical to those in the Bayer Action, that there was a final judgment on the merits in the Bayer

7    Action, and that the parties in both actions are in privity. *See* Mot. at 8-13. In response, Tevra argues

8    that res judicata does not apply because the claims in the Bayer Action and the Elanco Action

9    involve different defendants and time frame, and the two actions involve different facts. Opp. at 10.

10       "The doctrine of *res judicata* provides that 'a final judgment on the merits bars further

11   claims by parties or their privies based on the same cause of action.' " *In re Schimmels,* 127 F.3d

12   875, 881 (9th Cir. 1997) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)). Under Rule

13   8(c), res judicata may be raised as an affirmative defense in response to a pleading. Fed. R. Civ. P.

14   8(c)(1). To establish the defense of res judicata, a party must prove three elements: "(1) an identity

15   of claims, (2) a final judgment on the merits, and (3) [identity or] privity between parties." *Tahoe–*

16   *Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003); *see*

17   *also Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971).

18   Although res judicata is a defense, a party may assert it in a motion to dismiss where "the defense

19   raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

20       #### 1.  Identity of Claims

21       To decide whether the identity of claims requirement is met, courts consider four factors:

22   "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by

23   prosecution of the second action; (2) whether substantially the same evidence is presented in the

24   two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the

25   two suits arise out of the same transactional nucleus of facts." *United States v. Liquidators of*

26   *European Fed. Credit Bank,* 630 F.3d 1139, 1150 (9th Cir. 2011) (quotation marks and citation

27   omitted). "The fourth criterion – the same transactional nucleus of facts – is the most

28   important." *Id.* at 1151.

1
2

       **a.  The Bayer Action and the Elanco Action arise from the same transactional nucleus of facts.**

3

      Considering the most important factor first, Elanco argues that the Bayer Action and the

4

Elanco Action arise from the same transactional nucleus of facts because Tevra alleges "the same

5

optional exclusivity discounts as anticompetitive." Mot. at 9-10 (citing *In re Dual-Deck Video*

6

*Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1464 (9th Cir. 1993) and *Turtle Island Restoration*

7

*Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012)). Elanco argues that Tevra could

8

have brought its claims against Elanco in the Bayer Action. Mot. at 10. Elanco outlines in vivid

9

detail the virtual identity of allegations between the Bayer Action and the Elanco Action. Mot. at 4-

10

7 (chart showing side-by-side comparison). Elanco argues that Plaintiff's newly alleged Count IV,

11

violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for leveraging to maintain a monopoly,

12

does not change the result because the claim concerns "the same discounts in the same contracts"

13

as those in the Bayer Action. Mot. at 11-12 (citing *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th

14

Cir. 2007)).

15

      In response, Tevra argues that the Elanco Action and the Bayer Action do not arise from the

16

same transactional nucleus of operative fact because the two actions involve different entities and

17

time periods. Opp. at 10-11 (citing *Yagman v. Garcetti*, 743 F. App'x 837, 839 (9th Cir. 2018) and

18

*Harkins Amusement Enterprises, Inc. v. Harry Nace Co.,* 890 F.2d 181, 183 (9th Cir. 1989)). Tevra

19

argues that it could not have "conveniently" tried the two actions together because they involve

20

"different defendants, different timelines, and different facts for which additional discovery would

21

have been required." Opp. at 12.

22

      Upon reviewing the authorities cited by the parties and the market definitions proposed in

23

both actions, the Court finds that the Elanco Action and the Bayer Action involve "the same

24

transactional nucleus of facts." *Liquidators of European Fed. Credit Bank,* 630 F.3d at 1150-51. In

25

*Turtle Island*, the Ninth Circuit found that plaintiff's claims alleging that the State Department's

26

guidelines implementing Public Law 101-162, Section 609(b) violated the National Environmental

27

Policy Act was barred on res judicata grounds. *Turtle Island*, 673 F.3d at 919-20. The Ninth Circuit

28

found that plaintiff could have brought its claims when it filed its complaint in an earlier action in

United States District Court
Northern District of California

6

1998 and the claims "arise from the same transactional nucleus of facts" concerning the State Department's certification process. *Id.* at 919. The Ninth Circuit explicitly rejected plaintiff's argument that its challenges involved a certification decision by the State Department in 2009 that plaintiff "couldn't have known about or challenged" in the earlier action. *Id.* at 918. The Ninth Circuit explained that the 2009 certification was an "example" of the State Department's long-standing practice and plaintiff's claims were not "particular to a specific [] year." *See id.*

In *Dual-Deck*, after plaintiffs failed to prove that defendants' unlawful conspiracy before 1987 violated antitrust laws, plaintiffs brought a second lawsuit in which plaintiffs alleged that the same antitrust violations "continued unabated through the present." *Dual-Deck*, 11 F.3d at 1464. The Ninth Circuit found that the plaintiffs' claims were barred because they failed to allege a new conspiracy or other anticompetitive acts in the post-1987 period. *See id.*

In *Yagman*, the Ninth Circuit found the plaintiff's "third challenge to the constitutionality of the procedures provided by the City of Los Angeles for contesting parking tickets" was barred by res judicata. *Yagman*, 743 F.App'x at 838, 841. While the plaintiff based his claims on a "new" parking ticket, the Ninth Circuit found that he "raise[d] the same legal claims" in his prior lawsuits. *Id.* at 839. The Ninth Circuit found that the plaintiff failed to "identify a factually different procedure distinct from and occurring after" his earlier complaints, and his claims were barred by res judicata. *Id.* at 840.

In *Harkins*, the Ninth Circuit found that the plaintiff's antitrust claims in a later action were barred by res judicata to the extent that the claims concerned the same period that was adjudicated in an earlier action. *Harkin*, 890 F.2d at 182. But the Ninth Circuit found that the plaintiff's claims were not barred to the extent that they alleged "the defendants *entered into conspiracies after the date*" of the complaint in the earlier action because plaintiff alleged that the defendant entered into new antitrust conspiracies during that period. *Id.* at 183 (emphasis added). The Ninth Circuit explained that "[s]imply alleging the same type of claims against the same defendants for a later period does not guarantee a res judicata bar, because factual matters, such as the conduct of parties since the first judgment, must be considered." *Id.* (quoting *California v. Chevron Corp.*, 872 F.2d 1410, 1415 (9th Cir. 1989)).

Considering the above authorities, the Court finds that this case is like *Turtle Island*, *Dual-Deck*, and *Yagman*, and that *Harkins* is distinguishable. The Court finds that the Complaint in the Elanco Action repeats much of the same alleged facts as the operative complaint in the Bayer Action. *Compare* Compl. ¶¶ 5, 15, 107, 160-62 *with* Bayer Action, ECF 196 (Second Amended Complaint), ¶¶ 5, 14, 70, 74-76; *see* Mot. at 4-7. Both complaints bring antitrust claims based on Elanco/Bayer's agreements with retailers and distributors. *See, e.g.,* Compl. ¶ 74; Bayer Action, ECF 196 (Second Amended Complaint), ¶ 160. While the Complaint in the Elanco Action alleges that Elanco "maintained is [*sic*] monopoly in Imidacloprid Topicals by leveraging its monopoly in Imidacloprid collars," the section is based the same factual allegations made in the rest of the Complaint. *See* Compl. ¶¶ 92–97. The Court finds that the Complaint in the Elanco Action brings the same type of antitrust claims against Elanco for post-2020 period based on the same factual allegations in the Bayer Action, and the claims "could have been brought in the first action." *Turtle Island*, 673 F.3d at 918. Here, the Complaint alleges that Elanco "continued the agreements Bayer had in place before acquisition of Bayer's animal health division," and that those agreements "have continued to be renewed by retailers who continue doing business with Elanco today." Compl. ¶¶ 70-71, 84. Further, the pleadings in the Bayer Action were not settled until Tevra filed its second amended complaint on March 29, 2021, Bayer Action, ECF 195-3, a full six months after the sale to Elanco. In light of these allegations, the Court finds that Tevra "could have brought" its claims against Elanco when Tevra filed the second amended complaint in the Bayer Action. *Turtle Island*, 673 F.3d at 918. Thus, the Court finds that the Elanco Action and the Bayer Action arise out of "the same transactional nucleus of facts." *Liquidators of European Fed. Credit Bank,* 630 F.3d at 1151; *see Dual-Deck*, 11 F.3d at 1464; *Turtle Island*, 673 F.3d at 918.

**b.  The rights established in the Bayer Action would be impaired by prosecution of the Elanco Action.**

Elanco argues that the rights and interests established by the judgment in the Bayer Action would be impaired by an adverse judgment in the Elanco Action. Mot. at 11. In response, Tevra argues that the Elanco Action involves conduct by a different party and a contrary result would not impair the judgment in the Bayer Action. Opp. at 12-13.

United States District Court
Northern District of California

The Court finds that the Bayer Action and the Elanco Action involve the same agreements between Elanco/Bayer with the retailers and distributors and Tevra has failed to allege how those agreements were different post-2020. On that basis, the Court finds that a contrary result in the Elanco Action would impair the judgment in the Bayer Action.

### c. The Bayer Action and the Elanco Action involve infringement of the same right.

Elanco argues that the Bayer Action and the Elanco Action involve infringement of the same right. Mot. at 11. In response, Tevra argues that the Elanco Action concerns Elanco's anticompetitive conduct, not Bayer's. Opp. at 12-13.

Considering the Complaint in the Elanco Action, the Court finds that both the Bayer Action and the Elanco Action involve the same alleged right concerning Tevra's right to compete in the Imidacloprid Topical product market free from antitrust violations. Thus, this factor favors Elanco.

### d. Substantially the same evidence may be presented in the Bayer Action and the Elanco Action.

Elanco also argues that much of the same evidence presented in the Bayer Action would be presented in the Elanco Action. *See* Mot. at 11. In response, Tevra argues that the Elanco Action concerns Elanco's anticompetitive conduct, and "Elanco's conduct, practices, and contracts were not the subject of discovery" in the Bayer Action. Opp. at 12.

As discussed above, because Tevra's claims in both the Elanco Action and the Bayer Action concern the same agreements entered by Bayer, the Court finds that there is likely to be a substantial overlap in evidence presented in both actions. *See* Compl. ¶¶ 70-71, 74, 84; Bayer Action, ECF 196 (Second Amended Complaint), ¶ 160.

\*\*\*

For the above reasons, the claims in the Elanco Action and the Bayer Action are identical.

### 2. Final Judgment on the Merits

Elanco argues that the Bayer Action resulted in a final judgment on the merits because the jury unanimously reached a verdict. Mot. at 12; Reply at 5. In response, Tevra argues that the jury in the Bayer Action only considered evidence of Bayer's conduct and did not reach a final judgment

1    on the merits of the relevant antitrust market after August 1, 2020. Opp. at 13.

2        Here, the jury in the Bayer Action unanimously found that Tevra failed to prove the relevant

3    antitrust market, and thus the Bayer Action was "resolved on the merits." *Tahoe-Sierra Pres.*, 322

4    F.3d at 1078 (9th Cir. 2003) ("It is immaterial whether the claims asserted subsequent to the

5    judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is

6    whether they could have been brought.") (citation omitted).

7                    **3. Privity between the Parties**

8        Elanco argues that the parties in the Bayer Action and the Elanco Action are in privity. Mot.

9    at 12. Specifically, Elanco argues that Tevra is the plaintiff in both the Bayer Action and the Elanco

10   Action. Elanco further argues that there is "substantial identity" between Bayer and Elanco because

11   Elanco acquired Bayer's business and contracts and took over defense in the Bayer Action and was

12   present throughout trial. *Id.* (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983)). In

13   response, Tevra does not dispute that Elanco and Bayer have "sufficient commonality of interest."

14   Opp. at 13. Tevra does not dispute that Elanco is a successor to Bayer and participated in the Bayer

15   Action. *See id.* at 13-14. Rather, Tevra contends that neither Elanco nor Bayer "had ownership or

16   control over the conduct of the other at issue" in the Bayer Action, and that Tevra brought this action

17   against Elanco, not Bayer. *Id.*

18       Privity exists when parties share "substantial identity"– essentially, "when there is sufficient

19   commonality of interest" between the parties." *Gottheiner*, 703 F.2d at 1140. *"One who is not a*

20   *party of record may be bound if he had a sufficient interest and participated in the prior action."*

21   *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980).

22       The Complaint alleges that Elanco is the "successor to Bayer's animal health business," and

23   that Bayer's agreements are now "continued by Elanco." Compl. ¶¶ 4, 70, 71, 76. The Complaint

24   also alleges that Elanco continues to renew Bayer's "restrictive purchase agreements" with the

25   retailers. *Id.* ¶ 84.

26       The Court finds that Elanco's participation in the Bayer Action following its acquisition of

27   Bayer's business weighs heavily in favor of a finding that "there is sufficient commonality of

28   interest" between Elanco and Bayer. *Gottheiner*, 703 F.2d at 1140 (finding "privity" existed between

United States District Court
Northern District of California

10

a corporation and its sole and controlling shareholder); *see also Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004) ("Substantial participation or control by the non-party in the named party's suit weighs heavily in favor of a finding of virtual representation."). Here, there is no dispute that Elanco is the successor of Bayer. *See* Compl. ¶¶ 4, 70, 71, 76. Thus, Elanco's participation in the Bayer Action and its status as successor-in-interest is sufficient to find privity between Elanco and Bayer for res judicata's purpose. *See Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1243 n.8 (9th Cir. 2004) (holding the parties in two different actions are the same in light of the "status as successor" between parties in the two actions).

Thus, the Court finds that the parties in the Bayer Action are in privity with the parties in the Elanco Action.

*** 

For the above reasons, the Court GRANTS Elanco's motion to dismiss on the basis that Tevra's claims are barred by res judicata WITH LEAVE TO AMEND. *See Demoruelle v. Rao*, No. CV 20-00147 LEK-RT, 2021 WL 310339, at *6 (D. Haw. Jan. 29, 2021) (finding amendment was not necessarily futile for claims against certain defendants that were dismissed based on res judicata and granting leave to amend for those claims). For the first time, in its Reply, Elanco argues that dismissal on res judicata grounds is necessarily with prejudice. Reply at 13. Elanco relies on *Glaude v. Deutsche Bank*, No. 23-cv-05429-RS, 2024 WL 664806, at *4 (N.D. Cal. Feb. 16, 2024). Having raised this issue without giving Tevra the opportunity to respond and considering that *Glaude* summarily rejected leave to amend without any analysis or citation, the Court will allow amendment without prejudice to raise this issue in the next go-round because the Court cannot definitely say amendment is futile. Although it seems only a remote possibility that Tevra will be able to plead around the res judicata bar, Tevra promised at the hearing that it could amend the complaint to allege changed conditions based only on evidence after August 2020. ECF 40 (Hearing Tr.), 17:7-14. The Court will let Tevra try.

### B. Collateral Estoppel (All Counts)

Elanco argues that Tevra is collaterally estopped in this action from asserting the same relevant market definition that was rejected by the jury in the Bayer Action. Mot. 13-15. In response,

Tevra argues that the asserted relevant market in this action is different from that in the Bayer Action. Opp. at 15. Specifically, Tevra contends that it is asserting a relevant market operated by Elanco after 2020, which considers "different facts and data from a different non-overlapping time period, involving a different monopolist" from those in the Bayer Action. *See id.*

Collateral estoppel "bars parties from relitigating an issue if the same issue was adjudicated in prior litigation." *SEC v. Stein*, 906 F.3d 823, 828 (9th Cir. 2018). Collateral estoppel applies when: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021). The Court will address each factor in turn.

### 1.  The Relevant Market Is Identical in the Bayer Action and the Elanco Action.

The party asserting collateral estoppel "must show that the estopped issues are identical to issues litigated in a prior action." *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999). Four factors are considered to determine if the estopped issues are identical in the present action and in a prior action: 1) whether there is "a substantial overlap between the evidence or argument to be advanced" in the two proceedings; 2) whether "the new evidence or argument involve[s] the application of the same rule of law" in the two proceedings; 3) whether pretrial preparation and discovery in the prior action could "reasonably be expected to have embraced the matter sought to be presented" in the present action; and 4) whether the claims are "closely related" in the two proceedings. *Id.*

Elanco argues that Tevra asserted an identical market definition in the Bayer Action and the Tevra Action and thus Tevra should be collaterally estopped from relitigating the relevant market issue. Mot. at 14 (citing *Dual-Deck*, 11 F.3d at 1464). In response, Tevra argues that the relevant markets asserted in the two actions are not identical because the Elanco Action "concerns a different party in a distinct, nonoverlapping time." Opp. at 16. Tevra contends that market definition is fact-specific and that it has alleged Elanco entered "new agreements" and committed "new antitrust conduct." *Id.* at 17 (citing *Harkins*, 890 F.2d at 183).

Upon reviewing the authorities cited by the parties and the market definitions alleged in both

United States District Court
Northern District of California

actions, the Court finds that Tevra is collaterally estopped from asserting an identical relevant market in the Elanco Action. In *Dual-Deck*, the Ninth Circuit found that the plaintiffs were collaterally estopped from asserting the same unlawful conspiracy because they failed to allege a new conspiracy or other anticompetitive acts in the post-1987 period. *See Dual-Deck*, 11 F.3d 1463-64. In *Harkins*, the Ninth Circuit found that the plaintiff's allegations in the later case were not collaterally estopped because they alleged "new antitrust conduct"–entry into new conspiracies–in the period subsequent to the first case. *Harkins*, 890 F.2d at 183. Like *Dual-Deck*, here, Tevra asserts identical relevant markets in the Elanco Action and the Bayer Action. *Compare* Compl. ¶ 14 (asserting the relevant antitrust market as "topical imidacloprid flea and tick products for dogs and cats in the United States") *with* Bayer Action, ECF 96 (Second Amended Complaint) ¶ 18 (asserting the relevant antitrust market as "topical flea and tick products for dogs and cats containing Imidacloprid"). Unlike *Harkins*, the Court finds that Tevra has failed to adequately allege new antitrust violations post-2020. *See* Compl. ¶ 2 ("Elanco began selling these Imidacloprid Topicals on August 1, 2020 following Elanco's acquisition of Bayer's animal health business."); *id.* ¶ 4 ("To maintain its monopoly. . . Elanco carried out illegal exclusive dealing and leveraging agreements."); *id.* ¶ 7 (Elanco purchased Bayer's animal health division and "since August of 2020 has been selling Bayer's former name brand Imidacloprid Topicals."); *id.* ¶ 69 (Elanco's "illegal exclusive dealing, and leveraging schemes" began in August of 2020 and continued to present day.); *id.* ¶ 70 (Elanco "continued the agreements Bayer had in place before acquisition of Bayer's animal health division."); *id.* ¶ 93 ("Beginning on or about August 1, 2020, Elanco's retailer contracts offered a multi-percentage discount on the bundle of Advantage, Advantix, and Seresto.").

The Court disagrees with Tevra's contention that the claims in the Bayer Action and the Elanco Action "are based on different facts." Opp. at 16. Collateral estoppel can be applied to "successive litigation of an issue of fact or law." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040-41 (9th Cir. 2017). Here, the alleged relevant antitrust market in the Elanco Action is identical to that in the Bayer Action, and Elanco is collaterally estopped from relitigating the same issue in the Elanco Action absent pleading clearly distinct facts. *See McNeil v. Nat'l Football League*, 790 F. Supp. 871, 890-93 (D. Minn. 1992) (holding the issue of relevant market was fully litigated in prior

1    actions and defendants were collaterally estopped from relitigating the issue).

2              **2.  The relevant market issue was litigated and decided in the Bayer Action.**

3         Elanco argues that the market definition issue was fully litigated in the Bayer Action and

4    that the jury unanimously found that Tevra failed to prove its proposed relevant market definition.

5    Mot. at 15; Reply at 7-8. In response, Tevra argues that the "post-2020 relevant market in which

6    Elanco operated has not been litigated or decided." Opp. at 17.

7         As discussed above, because Tevra has failed to allege how a post-2020 relevant market is

8    factually different from the same relevant antitrust market in the pre-2020 time period, the relevant

9    market issue was fully litigated and decided in the Bayer Action. *See* Bayer Action, ECF No. 485

10   (Jury Verdict Form); *Dual-Deck*, 11 F.3d at 1464.

11             **3.  There was a full and fair opportunity to litigate the relevant market issue.**

12        Elanco argues that Tevra had a full and fair opportunity to litigate the relevant market issue

13   in the Bayer Action. Mot. at 15. In response, Tevra argues that it did not have a chance to litigate its

14   claims against Elanco because it could not present evidence about Elanco's conduct post-2020. Opp.

15   at 18 (citing Bayer Action, ECF 480 (Trial Tr.) at 1472:20-23; ECF 482, Instr. No. 48.B; ECF 480

16   (Trial Tr.) at 1487:24-1488:6).

17        Tevra had a full and fair opportunity to litigate the relevant market issue at trial in the Bayer

18   Action, and the jury returned a verdict that Tevra failed to prove its proposed relevant market. *See*

19   Bayer Action, ECF No. 485 (Jury Verdict Form). Because Tevra has failed to allege the factual

20   differences between the relevant market in the Bayer Action and in the Elanco Action, this factor is

21   against Tevra. *See Dual-Deck*, 11 F.3d at 1464.

22             **4.  Merits of the relevant market issue were necessary in the Bayer Action.**

23        Elanco argues that Courts "routinely preclude" market definitions that were previously

24   rejected by another court. Opp. at 15 (citing *Selectron, Inc. v. AT&T*, 587 F. Supp. 856, 859–60 (D.

25   Or. 1984) and *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 696–97

26   (D. Md. 2017)). In response, Tevra argues that the relevant market applicable to Elanco "was not

27   necessary for determination on the merits" in the Bayer Action because of the different time frame.

28   Opp. at 19. In reply, Elanco argues that Tevra has failed to allege "why the market definition analysis

United States District Court
Northern District of California

would change following Elanco's acquisition." Reply at 7.

The Court finds that the relevant market issue was fully and fairly litigated in the Bayer Action, and the issue was decided on the merits. *See* Bayer Action, ECF No. 485 (Jury Verdict Form). The relevant market in the Elanco Action is identical to that in the Bayer Action and Elanco has not alleged any facts showing how the post-2020 relevant market is different from that asserted in the Bayer Action. Accordingly, this factor is against Tevra. *See Selectron, Inc. v. AT&T*, 587 F. Supp. at 859–60.

\*\*\*

For the above reasons, the Court GRANTS Elanco's motion to dismiss on the basis that Tevra is collaterally estopped from asserting the same antitrust market WITH LEAVE TO AMEND.

### C. Evaluation of Claims under Rule 12(b)(6)

In light of the similarity between the Complaint in the Elanco Action and the operative complaint in the Bayer Action, the parties will find the Court's analysis here similar to that in the motion to dismiss orders in the Bayer Action. *See* Bayer Action, ECF 155 (Order Granting Motion to Dismiss with Leave to Amend); ECF 231 (Order Denying Defendants' 12(b)(6) Motion to Dismiss Second Amended Complaint; Granting Defendants' 12(B)(2) Motion to Dismiss for Lack of Personal Jurisdiction).

#### 1. Relevant Market (All Counts)

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *In re eBay Seller Antitrust Litig.*, 545 F.Supp.2d 1027, 1031 (N.D. Cal. 2008) (citation omitted). Cross-elasticity of demand— *i.e.*, "whether consumers view the products as substitutes for each other," *Rebel Oil Co. v. Atl.*

United States District Court
Northern District of California

1    *Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995)—is a guiding principle of product market

2    definition. *See Newcal*, 513 F.3d at 1045.

3         In the Complaint, Tevra alleges the following relevant market: "topical imidacloprid flea

4    and tick products for dogs and cats in the United States." Compl. ¶ 15. Tevra alleges that application

5    of the Hypothetical Monopolist Test ("HMT") suggests that "Fipronil topicals (including Frontline

6    and its generics) and non-topical flea and tick treatments are NOT in the same relevant antitrust

7    market as Imidacloprid Topicals (including Advantage, Advantix, and their generics)." *Id.* ¶ 24.

8    Tevra alleges that "[Elanco] profitably increased price when it controlled both the branded and

9    authorized generic Imidacloprid Topicals." *Id.* ¶ 28. Tevra alleges that an investigation into the

10   Elanco/Bayer acquisition by the U.S. Federal Trade Commission indicates that Fipronil topicals and

11   Imidacloprid Topicals are not interchangeable and are not in the same relevant antitrust market. *Id.*

12   ¶¶ 33-38. Tevra further alleges that Imidacloprid Topicals are not interchangable with Fipronil

13   Topicals because they have distinct characteristics and are not therapeutic equivalents. *Id.* ¶¶ 41-

14   42. Tevra alleges that Nielsen, a global data measurement and analytics company, tracks data for

15   Fipronil and Imidacloprid separately. *Id.* ¶ 44.

16        Elanco argues that Tevra has not adequately identified a relevant market. Mot. at 16. Elanco

17   argues that Tevra conclusively repeats its allegations in the operative complaint in the Bayer Action

18   which "narrowly survived motions to dismiss." *Id.* Elanco contends that Tevra has not pled any

19   "real-world examples" which was the basis on which the operative complaint in the Bayer Action

20   survived a motion to dismiss. Mot. at 16. Elanco argues that other allegations in Tevra's complaint

21   merely recite facts that were previously rejected by the Court in the motion to dismiss the operative

22   complaint in the Bayer Action. Mot. at 16-17 (citing Compl. ¶¶ 38, 41–42).

23        In response, Tevra argues that it has pled that other flea and tick products are not substitutes

24   for Imidacloprid Topicals. Opp. at 22. Tevra also contends that the FTC's investigation of Elanco's

25   acquisition of Bayer's animal health business makes Tevra's relevant antitrust market plausible. *See*

26   *id.* Tevra argues that "it should be permitted to proceed to discovery to develop its claims." Opp. at

27   23.

28        The Court finds that Tevra's proposed relevant market is not factually supported. A

comparison between the Complaint in the Elanco Action and the operative complaint in the Bayer Action reveals that Tevra's proposed relevant market here is based on facts that this Court found to be insufficient to survive a motion to dismiss in the Bayer Action. For example, in the Bayer Action, the Court considered and found the differences between Fipronil and Imidacloprid did not plausibly indicate that they were not interchangeable. *See* Bayer Action, ECF 231 at 13; Elanco Action, Compl. ¶¶ 39–43, 46–49. In the Bayer Action, the Court also considered Tevra's allegation concerning the FTC's investigation of the Elanco/Bayer acquisition and found that those allegations "d[id] not support Tevra's proposed relevant market." Bayer Action, ECF 231 at 17; *see* Compl. ¶¶ 33-38. Critically, in the Elanco Action, Tevra alleges in only conclusory terms the results of the HMT test, and does not allege any real-world examples that were necessary to support plausibility in the Bayer Action. *Compare* Bayer Action, ECF 196 (Second Amended Complaint), ¶¶ 39-54 *with* Elanco Action, Compl. ¶¶ 24-32; *see* Bayer Action, ECF 231 at 11-12. Accordingly, the Court finds that Tevra's alleged relevant market in the Elanco Action is "facially unsustainable." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120–21 (9th Cir. 2018) (dismissing case for failure to plead any plausible product market).

For the above reasons, the Court GRANTS Elanco's Motion to Dismiss on the basis that Tevra has failed to allege a factually plausible relevant market WITH LEAVE TO AMEND.

### 2. Exclusive Dealing (Counts II and III)

Tevra asserts two claims for unlawful exclusive dealing arising from Elanco's agreements with retailers and distributors: 1) under Section 1 of the Sherman Act (Compl. ¶¶ 111-15); and 2) under Section 3 of the Clayton Act (Compl. at ¶¶ 116-21).

"Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010). While antitrust laws object to exclusive dealing for its tendency to "foreclose" competitors or new entrants from competition in the covered portion of the relevant market during the term of the agreement, there are "well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition." *Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th

Cir. 1997) (citation omitted). Thus, in the Ninth Circuit, "an exclusive dealing arrangement is not per se illegal." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 1003 (9th Cir. 2020). Instead, "[o]nly those arrangements whose 'probable' effect is to 'foreclose competition in a substantial share of the line of commerce affected'" run afoul of antitrust laws. *Omega Envtl.*, 127 F.3d at 1162 (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)).

Elanco argues that Tevra has failed to plausibly allege that Elanco's agreements with retailers foreclosed competition in any relevant market. Elanco contends that the agreements at issue are "for a term of two years or less and are terminable at will." Mot. at 17-18. In response, Tevra argues that it has adequately pled that it was foreclosed from the sales of Imidacloprid Topicals in the United States. Opp. at 23-24 (citing Compl. ¶¶ 72-88).

### a.  Elanco's Agreement with Retailers

Elanco argues that Tevra has failed to adequately allege facts supporting Tevra's allegation that Elanco's agreements with the retailers are "*de facto* long-term and not easily terminable." Mot. at 17-18 (citing Compl. ¶¶ 81-82); *see* Reply at 10-11. Elanco argues that its contracts are short term and easily terminable. Mot. at 17. In response, Tevra argues that it alleged "pet specialty retailers' refusal to carry generics due to the Elanco agreements, lack of non-Elanco or non-Elanco-licensed imidacloprid topicals in the pet specialty channel, Elanco's practice of bundling its imidacloprid topical products with the patent-protected Seresto flea collar, and the impact of Elanco's market power resulting in retailers being placed at a competitive disadvantage to their peers unless they, too, agreed to Elanco's terms." Opp. at 23-24 (citing Compl. ¶¶ 72-88). Elanco argues that these allegations are conclusory only. Reply at 10-11.

A contract may be exclusive, even though it does not contain specific agreements not to use the goods of a competitor, if its "practical effect" is to prevent such use.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 1004 (9th Cir. 2020) (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 326 (1961)). That said, it is well established that "the short duration and easy terminability of [exclusive] agreements negate substantially their potential to foreclose competition." *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997). In *Omega Environmental*, the Ninth Circuit found one-year contracts to be acceptable against an exclusive-

dealing challenge and cited a case in support involving two-year contracts. *Id.* at 1163–64 (citing *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 237 (1st Cir. 1983) (two-year contracts reasonable)). Other courts in this district have found contracts with terms ranging up to three years to be acceptable. *See e.g.*, *PNY Techs.*, 2014 WL 2987322, at *4 (finding one-three year contracts acceptable); *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1064 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999) (describing a contract term of up to three years as having a "relatively short duration").

The Complaint alleges that Elanco's agreements with the retailers and distributors "are not easily terminable and effectively operate as *de facto* long-term exclusive dealing agreements" regardless of the agreements' stated length or termination clauses. Compl. ¶ 81. The Complaint alleges that the agreements are not "easily terminable" because of 1) Elanco's near 100% market share, 2) the retailers' and distributors' fear of losing anticompetitive discounts and rebates on Elanco's product, and 3) the significant barriers to enter the Imidacloprid Topical market. *Id.* ¶¶ 78, 79, 82. The Complaint alleges that Elanco's agreements "substantially foreclose generic manufacturers of Imidacloprid Topicals from the relevant market." Compl. ¶ 81.

The Court finds that Tevra has failed to plead sufficient facts to establish that the terms offered by Elanco to retailers foreclose competition. Here, Elanco argues and Tevra does not dispute that Elanco's contracts are for a term of two years or less and are terminable at will. Mot. at 17; Opp. at 23. Tevra has failed to allege how those agreements are "*de facto* long-term" and "not easily terminable." Compl. ¶ 81; *see PNY Techs., Inc. v SanDisk Corp.*, No. 11-cv-04689-WHO, 2014 WL 2987322, at *1, 4 (N.D. Cal. July 2, 2014) (finding "terms ranging from one year to three year" are "short terms"); *W. Parcel Exp.*, 65 F. Supp. 2d at 1064 (finding contracts have 3-year terms and termination clauses requiring 30-day notice are not "in fact exclusive"). While Tevra alleges in conclusory terms that Elanco's agreements with the retailers and distributors are not "easily terminable," Tevra has failed to adequately allege why competition has been substantially foreclosed by Elanco's agreements with the retailers. *See PNY Techs.*, 2014 WL 2987322, at *6 (holding plaintiff failed to plausibly plead substantial foreclosure because it "has not pleaded (beyond naked assertions) facts showing that it failed to win contracts despite offering better terms or that

United States District Court
Northern District of California

[defendant] somehow thwarted its efforts to secure business through conduct other than competition on the merits."). Critically, in its Complaint in the Elanco Action, Tevra has failed to allege any facts that make its "*de facto* long term" and "not easily terminable" theory plausible as it did in the Bayer Action. *Compare* Compl. ¶¶ 78-79, 81-82 *with* Bayer Action, ECF 96 (First Amended Complaint), ¶¶ 135-151; *see* Bayer Action, ECF 155 (Order Granting Motion to Dismiss with Leave to Amend), at 17-18 (holding that the First Amended Complaint established that Bayer's Purchase Agreement "were exclusive in practice" based on the allegations that the retailers believed that they were in a "no generics" agreement with Bayer).

Accordingly, the Court finds that Tevra has failed to adequately plead its exclusive dealing claims based on Elanco's agreement with retailers.

### b.  Market Foreclosure

It is "necessary to establish the proper relevant market before it can be determined whether a particular exclusive-dealing arrangement unreasonably restrained competition in a substantial share of that market." *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1303 (9th Cir. 1982). The Complaint alleges that Elanco's agreements with retailers and distributors "are not easily terminable and effectively operate as *de facto* long-term exclusive dealing agreements." Compl. ¶¶ 81-82. The Complaint alleges that Tevra "has been foreclosed from between 37% and 51% of all sales of Imidacloprid Topicals in the U.S., mostly in the two largest channels, brick and mortar pet specialty retailers and internet pet specialty retailers." Compl. ¶ 86. The Complaint alleges that Elanco's agreements with Chewy.com, Petco.com, and PetMed Express—which collectively represent approximately 75% of internet pet specialty retail sales for Imidacloprid Topicals—have effectively foreclosed that market segment to generic competitors. *Id.* ¶ 87. The Complaint alleges that Elanco's agreements have foreclosed generic's access to approximately 70% of brick-and-mortar pet specialty sales channels through PetCo, PetSense, and PetSmart. *Id.* ¶ 88. The Complaint alleges that these major retailers refuse to carry generic Imidacloprid products due to fear of losing Elanco's substantial anti-competitive discounts and rebates, despite generic Imidacloprid products being offered at significantly lower prices. *See id.*

"[T]here is no set percentage for how much of the relevant market must be foreclosed."

*Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP, 2006 WL 1236666, at *4 (C.D. Cal. Mar. 22, 2006), *aff'd*, 350 F. App'x 95 (9th Cir. 2009); *see Omega Env't*, 127 F.3d at 1162 (9th Cir. 1997) (holding foreclosure 38% of the relevant market not actionable); *Twin City Sportservice*, 676 F.2d at 1304 (holding that 24% foreclosure for an unreasonable length of time is substantial). But "[e]xclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal." *Omega Env't*, 127 F.3d at 1162. As discussed above, because Tevra has failed to plead relevant market, Tevra's allegations do not support a plausible foreclosure from a substantial share of the market.

<div align="center">***</div>

For the above reasons, the Court GRANTS WITH LEAVE TO AMEND Elanco's motion to dismiss Tevra's Count II for executive dealing in violation of Section 1 of the Sherman Act, and Count III for executive dealing in violation of Section 3 of the Clayton Act.

### 3. Monopolization (Count 1)

In Count I, Tevra asserts an unlawful monopolization claim in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Compl. ¶¶ 105-10. "There are three essential elements to a successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir.2010) (quoting *Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp.*, 613 F.2d 727, 735 (9th Cir.1979)) (internal quotation marks omitted). Elanco argues that Tevra has failed to adequately allege 1) a relevant market, and 2) that Elanco willfully maintained its alleged monopoly power. Mot. at 18-19. In response, Tevra argues that it has "satisfactorily pled the anticompetitive effect of Elanco's exclusionary conduct in the relevant market." Opp. at 24-25.

#### a. Monopoly Power

Tevra alleges that Elanco possesses "monopoly power in the United States in the sale of Imidacloprid Topicals." Compl. ¶ 107. "[D]efining the relevant market is indispensable to a monopolization claim." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989). Thus, Tevra's allegations of Elanco's monopoly power under Section 2 of the Sherman

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

1    Act rise and fall with Tevra's definition of "relevant market." Because the Court has found Tevra

2    failed to define a factually sustainable relevant market, Tevra has failed to sufficiently allege

3    monopoly power. *Brignac v. Yelp Inc*., No. 19-CV-01188-EMC, 2019 WL 2372251, at *4 (N.D.

4    Cal. June 5, 2019) (dismissing a monopolization claim where the relevant market's definition was

5    facially unsustainable).

### b. Maintenance of Monopoly Power

7        Elanco argues that Tevra has failed to adequately allege that "Elanco willfully maintained

8    its alleged monopoly power through exclusionary conduct." Mot. at 19. Specifically, Elanco argues

9    that Tevra's monopolization claim is premised on Elanco's exclusive dealing arrangement, and the

10   monopolization claim should fall with Tevra's exclusive dealing claims brought under Section 1 of

11   the Sherman Act and Section 3 of the Clayton Act. *See* Mot. at 19; Reply at 11. In response, Tevra

12   argues that it has adequately alleged that Elanco "willfully honored Bayer's imidacloprid exclusivity

13   agreements and made new agreements in its own name, imposing conditions that incentivized

14   retailers not to carry generic imidacloprid topicals." Opp. at 24-25 (citing Compl. at ¶¶ 70, 72, 74-

15   83).

16       In the Complaint, Tevra alleges that it tried to sell its generic Imidacloprid Topicals to

17   retailers already carrying its generic Fipronil product but was repeatedly rejected by those retailers

18   based on "an agreement with Bayer, now continued by Elanco." Compl. ¶ 70. Tevra also alleges

19   that Elanco implemented various strategic measures to protect its dominance in the Imidacloprid

20   Topicals market and prevent generic competition. *Id.* ¶ 72. Tevra alleges that Elanco incorporated

21   "exclusivity" terms in contracts with retailers that created strong disincentives for carrying generic

22   alternatives, along with penalties for retailers who did so. *See id.* Tevra alleges that Elanco uses

23   exclusivity discounts on product bundles to prevent retailers from carrying generic Imidacloprid

24   Topicals that compete with Elanco's higher-priced brand topicals. *See id.* ¶¶ 74, 76.

25       Since Tevra's monopolization claim is based on Elanco's exclusive dealing arrangements

26   with the retailers, this claim will raise or fall with Tevra's exclusive dealing claims. *See Fed. Trade

27   Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) ("If, in reviewing an alleged Sherman

28   Act violation, a court finds that the conduct in question is *not* anticompetitive under § 1, the court

United States District Court
Northern District of California

22

need not separately analyze the conduct under § 2."). As discussed above, because the Court finds Tevra's exclusive dealing claims brought under Section 1 of the Sherman Act and Section 3 of the Clayton Act are inadequately pled, Tevra's monopolization claim brought under Section 2 of the Sherman Act falls with those claims. *See Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544 (9th Cir. 1983) (dismissing Section 2 claims based on tying because the tying claims were not adequately pled); *Power Analytics Corp. v. Operation Tech., Inc.*, No. SA CV-01955 JAK, 2017 WL 11486807, at *21 (C.D. Cal. Dec. 7, 2017) (dismissing Section 2 claim based on inadequacy in Section 1 claim).

*** 

For the above reasons, the Court GRANTS Elanco's motion to dismiss Tevra's Count I, unlawful maintenance of a monopoly in violation of Section 2 of the Sherman Act WITH LEAVE TO AMEND.

### 4. Monopoly Leveraging (Count IV)

In Count IV, Tevra asserts a monopoly leveraging claim in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. "Monopoly leveraging is just one of a number of ways that a monopolist can permissibly benefit from its position." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991).

#### a. Monopoly leveraging cannot be brought as a standalone claim.

As a threshold matter, the parties dispute whether monopoly leveraging can be brought as a standalone claim. Elanco argues that monopoly leveraging cannot properly be brought under Section 1 of the Sherman Act, as stated in the Complaint. Mot. at 19; *see* Compl. at 34. Elanco further argues that monopoly leveraging cannot be brought as a standalone claim under Section 2 of the Sherman Act. Mot. at 19 (citing *Alaska Airlines*, 948 F.2d at 547-48 and *John Doe 1 v. Abbott Lab'ys*, 571 F.3d 930, 935 (9th Cir. 2009)). In response, Tevra does not argue that its monopoly leveraging claim is brought under Section 1 of the Sherman Act. Opp. at 25-26. Rather, Tevra argues that monopoly leveraging is a viable theory under Section 2 of the Sherman Act. Opp. at 25 (citing *Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996) and *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1139 (9th Cir. 2022)).

United States District Court
Northern District of California

1    The Court agrees that monopoly leveraging cannot be brought under the Sherman Act in the

2    manner adopted by the Second Circuit in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263

3    (2d Cir. 1979). *See Alaska Airlines*, 948 F.2d at 547-48. The Ninth Circuit explicitly rejected

4    *Berkey's* "monopoly leveraging doctrine as an independent theory of liability under Section 2 [of

5    the Sherman Act]." *Alaska Airlines*, 498 F.2d at 547; *see Doe 1*, 571 F.3d at 935 (rejecting a "free-

6    standing monopoly leveraging claim"); *Image Tech. Servs. Inc. v. Eastman Kodak Co.*, 125 F.3d

7    1195, 1209 (9th Cir. 1997) (" '[M]onopoly leveraging' could not exist as a basis for § 2 liability in

8    the absence of the defendant using its monopoly in one market to monopolize or attempt to

9    monopolize the downstream market.").

10    Tevra relies on the Ninth Circuit's further development of this theory of liability in *Cost

11    Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996). *See* Opp. at 25. In

12    *Cost Mgmt.*, the Ninth Circuit reaffirmed its rejection of monopoly leveraging as that theory was

13    defined in *Berkey Photo* but endorsed a different definition of that theory. *See Cost Mgmt.*, 99 F.3d

14    at 951. The Ninth Circuit explained that "monopoly leveraging [] as an attempt to use monopoly

15    power in one market to monopolize another market" is a "viable theory under Section 2." *Id.* The

16    Ninth Circuit held that, because the plaintiff there "alleged conduct which may be reached 'under

17    the doctrine of attempted monopoly,'" it may proceed under the theory of "monopoly leveraging."

18    *Id.* at 952 (quoting *Alaska Airlines*, 948 F.2d at 549). In order to successfully maintain a monopoly

19    leveraging claim as allowed in *Cost Mgmt.*, Tevra "must establish each of the elements normally

20    required to prove an attempted monopolization claim under section 2 of the Sherman Act." *Cost

21    Mgmt.*, 99 F.3d at 952.

22    In reviewing the Complaint, it is clear that Tevra has failed to allege sufficient facts to

23    support each of the required elements of an attempted monopolization claim. Because Tevra has

24    failed to plead monopolization or relevant market, Tevra has failed to adequately plead its monopoly

25    leveraging claim. *See Alaska Airlines*, 948 F.2d at 548.

                                        \*\*\*

26

27    For the above reasons, the Court GRANTS Elanco's motion to dismiss Tevra's Count IV,

28    leveraging to maintain a monopoly in violation of Section 1 of the Sherman Act WITH LEAVE TO

1    AMEND.

2    **D.  Leave to Amend**

3    In deciding whether to grant leave to amend, the Court must consider the factors set forth by

4    the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth

5    Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court

6    ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue

7    delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4)

8    undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at

9    1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."

10    *Id*.  However, a strong showing with respect to one of the other factors may warrant denial of leave

11    to amend. *Id*.

12    Elanco argues that the complaint should be dismissed without leave to amend because "[t]his

13    is effectively the fourth complaint that Tevra has brought on the same factual allegations," and

14    amendment would be futile. Mot. at 20. In response, Tevra requests an opportunity to cure any

15    defect exhibited in the Complaint. Opp. at 26-27. Because Tevra may be able to cure the deficiencies

16    the Court had identified for the first time in this action, Elanco's Motion is GRANTED WITH

17    LEAVE TO AMEND.

18    The Court looks forward to a robust amendment based on facts during the period of Elanco's

19    ownership of these products. Although Tevra complained that it had been hampered in developing

20    its factual allegations because Elanco refused to provide discovery, Tevra well knows that the key

21    to discovery is the filing of legally sufficient claims.

22    **V.    ORDER**

23    For the foregoing reasons, IT IS HEREBY ORDERED that:

24    (1) Elanco's motion to dismiss on the basis that Tevra's claims are barred by the doctrine of

25        res judicata is GRANTED WITH LEAVE TO AMEND;

26    (2) Elanco's motion to dismiss on the basis that Tevra is collaterally estopped from asserting

27        the same antitrust market is GRANTED WITH LEAVE TO AMEND;

28    (3) Elanco's motion to dismiss Count I for unlawful maintenance of a monopoly in violation

United States District Court
Northern District of California

25

of Section 2 of the Sherman Act, 15 U.S.C. § 2, is GRANTED WITH LEAVE TO AMEND;

(4) Elanco's motion to dismiss Count II for executive dealing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, is GRANTED WITH LEAVE TO AMEND;

(5) Elanco's motion to dismiss Count III for executive dealing in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, is GRANTED WITH LEAVE TO AMEND; and

(6) Elanco's motion to dismiss Count IV for leveraging to maintain a monopoly in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, is GRANTED WITH LEAVE TO AMEND.

Any amended complaint SHALL be filed within thirty (30) days of the date of this Order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this Order will result in a dismissal of the deficient claims with prejudice. Leave to amend is limited to the defects addressed in this Order, and Plaintiffs may not add parties or claims without prior leave of the Court.

Dated:  March 31, 2025

BETH LABSON FREEMAN
United States District Judge